# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.,

Plaintiff,

v.

U.S. DEPARTMENT OF JUSTICE,

Defendant.

Case No. 18-cv-9363

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATION OF THE FREEDOM OF INFORMATION ACT, 5 U.S.C. § 552 *et seq.*

## INTRODUCTION

1.      Plaintiff NAACP Legal Defense and Educational Fund, Inc. ("LDF") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, as amended, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, to obtain injunctive and other appropriate relief, requiring Defendant U.S. Department of Justice ("DOJ") to respond to a FOIA request that LDF sent on April 11, 2018 ("Request"), and to promptly disclose the requested records.

2.      The Request seeks records concerning DOJ's role in the March 26, 2018 decision issued by U.S. Department of Commerce ("DOC") Secretary Wilbur Ross to reinstate a citizenship status question on the 2020 decennial U.S. Census. Top officials at both DOC and DOJ have asserted that reinstating the citizenship status question purportedly is necessary to protect minority

voting rights and to enforce Section 2 of the Voting Rights Act.[1] Specifically, the Request seeks records in DOJ's Civil Rights Division ("CRD") and the Office of Legal Policy ("OLP") concerning: (1) DOJ's review of whether a citizenship status question on the 2020 decennial U.S. Census is necessary to enforce Section 2 of the Voting Rights Act, and/or how adding a citizenship question will improve protections for minority voting rights; (2) DOJ's request for a citizenship status question as necessary to enforce Section 2 of the Voting Rights Act; (3) DOJ's review of whether a citizenship status question on the Census Bureau's American Community Survey ("ACS") is insufficient to enforce Section 2 of the Voting Rights Act, as asserted by DOC Secretary Ross; (4) DOJ's review of whether a citizenship status question will have an impact on the response rate of Black people in the 2020 decennial Census count; and (5) DOJ's review of whether a citizenship status question will have an impact on the response rate of non-Black racial or ethnic groups on the 2020 decennial Census count.

3.      Although LDF's Request is narrow and reasonable and LDF expressed a willingness to discuss any issue in further processing the Request, more than six months later DOJ has failed to produce a single document in response to the Request.

4.      Indeed, six months after the Request was submitted, OLP has failed to make any determination on the Request.

5.      CRD, meanwhile, has apparently failed to conduct a search but nonetheless improperly made a blanket determination denying the Request, claiming that any responsive records, and any portions thereof, are exempt from production pursuant to 5 U.S.C. §§ 552(b)(5)

---

[1] *See* Letter from Arthur E. Gary, General Counsel, DOJ, to Dr. Ron Jarmin, Acting Director, Census Bureau (Dec. 12, 2017), https://www.documentcloud.org/documents/4340651-Text-of-Dec-2017-DOJ-letter-to-Census.html; Memorandum from Wilbur Ross, Secretary, DOC, to Karen Dunn Kelley, Under Sec'y for Econ. Affairs, DOC at 1 (Mar. 26, 2018), https://www.commerce.gov/sites/commerce.gov/files/2018-03-26_2.pdf.

and (b)(7)(A). However, FOIA requires CRD to make a document-by-document assessment of the applicability of exemptions and a segregability analysis within each document, and DOJ regulations also require CRD to inform LDF of the volume of material withheld. 5 CFR § 16.6 (e)(3).

## BACKGROUND

6.     DOJ, DOC, and other agencies and officials in the Trump Administration have advocated since at least May of 2017 for the U.S. Census Bureau to add a question on citizenship status to the 2020 decennial U.S. Census. The decennial Census has not included that question since before 1950. That question has never been on the decennial Census during the time that DOJ and other private actors like LDF have worked to enforce the Voting Rights Act of 1965. However, toward the end of 2017, Administration officials began offering the justification that adding the question purportedly was necessary to protect minority voting rights. Indeed, in a March 26, 2018 memorandum, DOC Secretary Ross stated that DOJ, via a December 12, 2017 letter,[2] requested adding the citizenship question to effectively enforce Section 2 of the Voting Rights Act and to "protect[] minority population voting rights."[3]

7.     The proposal to add a citizenship status question on the decennial Census is the subject of multiple federal lawsuits. *See* Letter from Leah C. Aden, Deputy Director of Litigation, LDF et al., to Melanie Ann Pustay, Director or OIP, DOJ, at 6 n.2, dated August 28, 2018, (a true and correct copy is attached hereto as Exhibit G). Recent reports and evidence derived from that litigation have cast serious doubt on DOC Secretary Ross's claim that the request for the citizenship status question originated with DOJ's letter to the Acting Director of the Census Bureau

---

[2] Letter from Arthur E. Gary, *supra* note 1.
[3] Memorandum from Wilbur Ross, *supra* note 1.

rather than with Administration officials and DOC Secretary Ross himself.[4] According to the Hon. Jesse M. Furman of the Southern District of New York, the decision to add the citizenship status question represented a "strong showing of bad faith," and Secretary Ross's "statements [that DOJ requested the addition of the citizenship status question] were potentially untrue."[5]

8.    At least 171 voting rights and civil and human rights groups, including LDF,[6] have opposed the addition of the citizenship status question on the decennial Census, finding no merit to the claim that that question would aid in the enforcement of the Voting Rights Act or help protect minority voting rights.[7] LDF and other advocates contend that this rationale is pretextual, and that the addition of the question is designed to undermine the apportionment of people and diminish the voting rights and the voting power of voters of color.[8] This belief is consistent with bi-partisan experts who have warned officials that the addition of a citizenship status question will jeopardize the accuracy of the count by chilling participation of communities of color. Indeed, on January 29,

---

[4] *See, e.g.*, Salvador Rizzo, *Wilbur Ross's False Claim to Congress that the Census Citizenship Question Was DOJ's Idea*, WASH. POST (July 30, 2018), https://www.washingtonpost.com/news/fact-checker/wp/2018/07/30/wilbur-rosss-false-claim-to-congress-that-the-census-citizenship-question-was-dojs-idea/?utm_term=.7a8658a54e23.

[5] Ari Berman, *Federal Judge Rips Trump Administration Over Census Citizenship Question*, MOTHER JONES, https://www.motherjones.com/politics/2018/07/federal-judge-rips-trump-administration-over-census-citizenship-question/ (July 3, 2018) (citing pending litigation in *New York v. U.S. Dep't of Commerce*, No. 18-cv-02921 (JMF) (S.D.N.Y. Apr. 3, 2018).

[6] *See* Letter from Leah C. Aden, Dep. Director of Litigation, LDF et al. to Jennifer Jessup, DOC (Aug. 7, 2018), http://www.naacpldf.org/files/case_issue/2018.08.07_NAACP%20LDF%20Final%20Draft%20Public%20Comment_%20Census.%20%28rev%27d%29.pdf.

[7] Letter from Anti-Defamation League to Jennifer Jessup, DOC at 3-4 (July 30, 2018) (also stating that 160 Republican and Democratic mayors, six former Census Bureau directors, two former DOC Secretaries, over 120 U.S. Representatives, and more than 600 faith leaders have opposed the citizenship status question).

[8] *See New York v. U.S. Dep't of Commerce*, 315 F. Supp. 3d 766, 775 (S.D.N.Y. 2018) ("[Plaintiffs] plausibly allege that Secretary Ross's decision to reinstate the citizenship question on the 2020 census was motivated by discriminatory animus and [] its application will result in a discriminatory effect. . . [T]hat conclusion is supported by indications that Defendants deviated from their standard procedures in hastily adding the citizenship question; by evidence suggesting that Secretary Ross's stated rationale for adding the question is pretextual; and by contemporary statements of decisionmakers, including statements by the President, whose reelection campaign credited him with 'officially' mandating Secretary Ross's decision to add the question right after it was announced.").

2018, the Census Bureau's chief scientist, John Abowd, sent a now-publicly available internal memorandum to DOC Secretary Ross with a detailed analysis of DOJ's request. That analysis found that there was "a reasonable inference that a question on citizenship would lead to some decline in overall self-response."[9] That analysis further indicated that a citizenship status question "would make the 2020 Census modestly more burdensome in the direct sense, and potentially much more burdensome in the indirect sense that it would lead to a larger decline in self-response for non-citizen households."[10]

9.      Moreover, while the publicly available record reveals that Trump Administration officials had been requesting the reinstatement of the citizenship status question prior to the DOJ's December 2017, letter, contrary to what Secretary Ross has claimed,[11] it appears that the DOJ letter was the first time that the pretextual rationale of "protect[ing] against racial discrimination in voting" was proffered.[12]

---

[9] Memorandum from John M. Abowd, Chief Scientist & Assoc. Director for Research & Methodology, to Wilbur L. Ross, Jr., Sec'y of Commerce, DOC at 1281 (Jan. 19, 2018) http://www.osec.doc.gov/opog/FOIA/Documents/AR%20-%20FINAL%20FILED%20-%20ALL%20DOCS%20%5bCERTIFICATION-INDEX-DOCUMENTS%5d%206.8.18.pdf#page=1289; *see also* Hansi Lo Wang, *Documents Shed Light on Decision to Add Census Citizenship Question*, NPR (June 10, 2018), https://www.npr.org/2018/06/10/618567462/documents-shed-light-on-decision-to-add-census-citizenship-question.

[10] *Id.*

[11] *See* Tara Bahrampour, *Wilbur Ross Actively Pushed to Add Citizenship Question to 2020 Census, Documents Show*, WASH. POST (July 24, 2018), https://www.washingtonpost.com/local/social-issues/wilbur-ross-actively-pushed-to-add-citizenship-question-to-2020-census-documents-show/2018/07/24/5601b3b6-8f65-11e8-bcd5-9d911c784c38_story.html?noredirect=on&utm_term=.daca1df33242 ("A cache of documents released by the Commerce Department late Monday night provides further evidence that Secretary Wilbur Ross was pushing to add a citizenship question to the 2020 Census far more actively, and much earlier, than his later sworn testimony indicated."); Tara Bahrampour, *New Document Contradicts Ross's Testimony Congressional Testimony on Census Citizenship Question*, WASH. POST (Oct. 11, 2018), https://www.washingtonpost.com/local/social-issues/new-document-contradicts-rosss-congressional-testimony-on-census-citizenship-question/2018/10/11/9bedc8d6-cd97-11e8-920f-dd52e1ae4570_story.html?noredirect=on&utm_term=.3d18cb3a177f.

[12] Letter from Arthur E. Gary, *supra* note 1, at 1.

10.     The decision by DOC Secretary Ross under the Trump Administration to add a citizenship status question to the 2020 decennial U.S. Census, and the roles of DOJ and other agencies in that decision, have been opaque and seemingly manufactured. Complying with this Request will help bring clarity and transparency to whatever decision-making process led to the decision to add that question. This will serve the public interest by helping to ensure that the government properly carries out its constitutional duty of accurately and fairly conducting the decennial Census, and enforces the Voting Rights Act and protects minority voting rights.

11.     Rather than comply with the Request as required under the FOIA statute, OLP has failed to provide any determination as to the Request, while CRD has failed to search for, much less produce, records responsive to this Request, wrongfully claiming that every responsive record, and portion thereof, is exempt.

12.     OLP has yet to make a determination regarding the Request. LDF timely appealed CRD's adverse determination on its Request pursuant to 5 U.S.C. § 552(a)(6)(A)(i)(III)(aa). DOJ denied the appeal. Pursuant to 5 U.S.C. § 552(a)(6)(C)(i) and 5 U.S.C. § 552(a)(4), LDF has properly exhausted all administrative remedies.

## JURISDICTION AND VENUE

13.     This Court has subject-matter jurisdiction over this action and personal jurisdiction over the parties under 5 U.S.C. § 552(a)(4)(B), 5 U.S.C. §§ 701–706, and 28 U.S.C. §§ 1331, 2201, and 2202.

14.     Venue is proper in the United States District Court for the Southern District of New York pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i). Plaintiff LDF has its principal place of business in this district.

## PARTIES

15.     Plaintiff NAACP Legal Defense and Educational Fund, Inc. is a non-partisan, non-profit 501(c)(3) corporation established under the laws of the State of New York. LDF is the nation's oldest civil rights law organization, founded in 1940 by former Supreme Court Justice Thurgood Marshall. Since its inception, LDF has used legal, legislative, public education, and other advocacy strategies to promote the full, equal, and active participation of Black people in America's democracy. In furtherance of its missions, LDF has worked for over seven decades to secure and enforce voting rights for Black people and ensure equal political participation for all. LDF's efforts to ensure equal political participation and representation for Black people have included involvement in a number of seminal Supreme Court decisions, including: *Evenwel v. Abbott*, 136 S. Ct. 1120 (2016); *Shelby County v. Holder*, 570 U.S. 529 (2013); *Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193 (2009); *Gomillion v. Lightfoot*, 364 U.S. 339 (1960); *Terry v. Adams*, 345 U.S. 461 (1953); *Schnell v. Davis*, 336 U.S. 933 (1949) (per curiam); and *Smith v. Allwright*, 321 U.S. 649 (1944). For approximately five decades, LDF has brought or otherwise been involved in actions under Section 2 of the Voting Rights Act to remedy discrimination and provide equal opportunities to voters of color to participate in the political process, including: *Terrebonne Par. Branch NAACP v. Jindal*, 274 F. Supp. 3d 395 (M.D. La. 2017); *Ga. State Conf. of the NAACP v. Fayette Cty. Bd. of Comm'rs*, 118 F. Supp. 3d 1338 (N.D. Ga. 2015); *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399 (2006); *Chisom v. Roemer*, 501 U.S. 380 (1991); *Houston Lawyers' Ass'n v. Attorney Gen. of Texas*, 501 U.S. 419 (1991); and *Thornburg v. Gingles*, 478 U.S. 30 (1986). LDF, therefore, is intimately familiar with the information that is needed—or not needed—to enforce Section 2. LDF also educates the public, including Black community members and others, through reports, press releases, and other media

about the Census, what it means for their communities, and how to ensure that they are counted in the Census.

16.    Defendant DOJ is a department of the executive branch of the U.S. government headquartered in Washington, D.C., and an agency of the federal government within the meaning of 5 U.S.C. § 552(f)(1). The Civil Rights Division (CRD) and the Office of Legal Policy (OLP) are components of DOJ. The Office of Information Policy (OIP) is also a component of DOJ and performs two functions with regard to FOIA—it processes requests on behalf of certain other DOJ components, including OLP, and adjudicates FOIA appeals of determinations made by any DOJ component. On information and belief, DOJ has possession, custody, and control of the records that LDF seeks.

**LDF'S REQUESTS AND DOJ'S RESPONSES**

17.    On April 11, 2018, LDF submitted the Request to DOJ's Civil Rights Division (CRD) DOJ's Office of Legal Policy (OLP) by regular mail and online form. (A true and correct copy of the Apr. 11, 2018 Request is attached hereto as Exhibit A).

18.    Specifically, LDF seeks:

(a) All documents,[13] including but not limited to draft and final memoranda, opinions, analyses, or correspondence, relating to the U.S. Department of Justice's review of whether a citizenship status question on the 2020 decennial U.S. Census is necessary to enforce Section 2 of the Voting Rights Act and/or how adding a citizenship question will improve protections for minority voting rights.

(b) All documents, including but not limited to draft and final memoranda, opinions, analyses, or correspondence, relating to the U.S. Department of Justice's request for a citizenship status question

---

[13] LDF requested that the DOJ interpret the "term 'document' … in the broadest possible sense within the meaning of the [FOIA]" and to "include, without limitation, any written, printed, typed, spoken, computerized, or other graphic, phonic, or recorded matter of any kind or nature, however produced or reproduced, whether sent or received or neither, including drafts and copies bearing notations or marks not found on the original."

on the 2020 decennial U.S. Census as necessary to enforce Section 2 of the Voting Rights Act.

(c) All documents, including but not limited to draft and final memoranda, opinions, analyses, or correspondence, relating to the Department's review of whether a citizenship status question on the American Community Survey (ACS) is "insufficient in scope, detail, and certainty" to enforce Section 2 of the Voting Rights Act.

(d) All documents, including but not limited to draft and final memoranda, opinions, analyses, or correspondence, relating to the Department's review of whether a citizenship status question on the 2020 decennial U.S. Census will have an impact on the response rate of Black or African American people on the 2020 decennial U.S. Census count.

(e) All documents, including but not limited to draft and final memoranda, opinions, analyses, or correspondence, relating to the Department's review of whether a citizenship status question on the 2020 decennial U.S. Census will have an impact on the response rate of non-Black or non-African American racial or ethnic groups on the 2020 decennial U.S. Census count.

19.    LDF requested expedited processing of the Request under 5 U.S.C. § 552(a)(6)(E) because "the requested records concern the integrity of the democratic process, the funding of public programs, and other matters that are of vital interest to the American public. The requested records, thus, involve matters 'of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence.'" *Id.* at 2 (quoting 28 C.F.R. § 16.5(e)(1)). Alternatively, LDF requested DOJ's response to its Request "no later than 20 business days after receipt of [the Request]" (citing 5 U.S.C. § 552(a)(3) and (6)).

20.    LDF also requested a fee waiver with respect to the Request pursuant to the FOIA statute and DOJ's regulations. Ex. A at 2.

21.    LDF further asked that for any exempted document, DOJ disclose any reasonably segregable non-exempt portion of it. *Id.* at 2-3.

**CRD's Responses to LDF's Request**

22.     On April 25, 2018, April N. Freeman, writing for Nelson D. Hermilla of CRD, sent a letter to Leah C. Aden, LDF's then-Senior Counsel (now Deputy Director of Litigation), acknowledging receipt of the Request and assigning it the tracking number 18-00245-F. (A true and correct copy of the Apr. 25, 2018 Letter is attached hereto as Exhibit B).

23.     CRD's letter stated that there would be a delay in processing the Request and put forth the option of limiting the Request to potentially expedite the response time. *Id.*

24.     CRD has taken the position that it will not produce any documents in response to that Request because they are purportedly exempt from disclosure under FOIA. Indeed, on May 31, 2018, Mr. Hermilla of CRD sent a letter to Ms. Aden stating that, "[a]fter consideration of the responsive records," CRD had "determined that *all* responsive records are exempt from disclosure pursuant to 5 U.S.C. § 552(b)(7)(A) since disclosure thereof could reasonably be expected to interfere with law enforcement proceedings regarding the review of this issue by the Civil Rights Division's Voting Section." May 31, 2018 Letter at 1-2 (emphasis added). (A true and correct copy of the May 31, 2018 Letter is attached hereto as Exhibit D).

25.     CRD also responded that in addition to being exempt under 5 U.S.C. § 552(b)(7)(A), "certain information within these records . . . should also be denied pursuant to 5 U.S.C. § 552(b)(5), since records consist of attorney work product, and pre-decisional deliberative material and attorney client material." *Id.* at 2.

26.     CRD informed LDF that it could resubmit its Request once DOJ "has closed this matter" when "any documents that may be released . . . will not jeopardize the Department's currently active enforcement interest in this matter." *Id.*

27.    CRD's response provided no estimate of the volume of responsive records withheld.

28.    On August 28, 2018, LDF timely filed an appeal with DOJ concerning CRD's final determination and sought that that appeal be handled on an expedited basis. Ex. G.

29.    In its appeal, LDF argued that CRD: (1) failed to demonstrate that it conducted any search, let alone an adequate one, for responsive records; (2) failed to produce all or even any responsive documents (with or without redactions); (3) improperly relied on FOIA exemptions to withhold information, including issuing unsupported, blanket assertions of exemptions under 5 U.S.C. § 552(b)(7)(A) and 5 U.S.C. § 552(b)(5) without (i) articulating any reasonably foreseeable harm to any interest protected by either of those exemptions, (ii) identifying any functional categories of records to justify application of Exemption 7, (iii) providing any information to assess or even surmise whether any documents justify application of Exemption 5, or (iv) providing any estimate of the volume of materials that it has withheld under the exemptions or why providing such an estimate would harm those interests purportedly protected by those exemptions; and (4) failed in its obligation to segregate and produce responsive, non-exempt information.

30.    On September 17, 2018, Ms. Aden received an email indicating that LDF's request for expedited processing of its appeal had been denied. (A true and correct copy of the Sept. 17, 2018 email is attached hereto as Exhibit H).

31.    On September 28, 2018, Ms. Aden of LDF received a letter from Christina D. Troiani, Associate Chief of OIP's Administrative Appeals Staff, dated September 27, 2018, affirming CRD's initial determination to withhold records and effectively deny the Request. (A true and correct copy of the Sept. 27, 2018 Letter is attached hereto as Exhibit I).

32.     Through CRD's adverse determination regarding the Request and DOJ's affirmance of CRD's determination on appeal, LDF has exhausted its administrative remedies as to these issues and seeks immediate judicial review.

**OLP/OIP's Responses to LDF's Request**

33.     On April 30, 2018, Vanessa R. Brinkmann, Senior Counsel at OIP, responded separately on behalf of OLP, sending a letter to Sherrilyn Ifill, Sam Spital, Leah Aden, and Aaron Sussman of LDF acknowledging receipt of the Request on behalf of OLP. (A true and correct copy of the Apr. 30, 2018 Letter is attached hereto as Exhibit C).

34.     In the letter, Ms. Brinkmann stated that LDF's request for expedited processing had been referred to the Director of Public Affairs, who determined that the request be denied. *Id.* at 1.

35.     The letter further stated that because the Request falls within "unusual circumstances" under the FOIA statute, OIP, on behalf of OLP, would need to extend the time limit to respond beyond the ten additional days the FOIA statute permits an agency in such circumstances. *Id.*

36.     In the letter, OIP informed LDF that it assigned the Request to the "complex track" and stated that LDF could narrow the scope of its Request and agree to an alternative timeframe for OIP to process the Request. *Id.* at 1-2.

37.     Finally, in that letter, OIP informed LDF that it had not yet made a decision about LDF's request for a fee waiver. *Id*. at 2.

38.     On May 24, 2018, Ms. Aden and Mr. Sussman had a telephone call with Brittnie Baker, a FOIA Analyst for OIP assigned to the Request. Ms. Baker answered questions regarding the definition of "complex track," "unusual circumstances," and what the next steps would be, including that a significant backlog would likely cause a delay of quite a few months before any

search results related to LDF's Request would be received from OLP by OIP and thereafter reviewed.

39.     OIP has simply stated that it has no timeframe as to when it will respond. On July 13, 2018, Mr. Sussman sent an email to Ms. Baker of OIP asking for a status update on the OLP portion of the Request and a timeframe for when LDF might receive a determination. (A true and correct copy of the July 13, 2018 Email is attached hereto as Exhibit E).

40.     On July 16, 2018, Ms. Baker responded to Mr. Sussman's email, stating, "[t]he search is still pending, so there is no timeframe update at this time other than it may take a number of months to get the search results back and then review any records located for responsiveness and disclosure." (A true and correct copy of the July 16, 2018 Email is attached hereto as Exhibit F).

41.     LDF has received no further correspondence regarding the processing of the OLP portion of the Request.

42.     Through OIP's failure to respond to the Request on behalf of OLP within the time period required by law, LDF has constructively exhausted its administrative remedies and seeks immediate judicial review.

## CLAIMS FOR RELIEF

### Count I: Violation of FOIA for Failure to Conduct Adequate Searches for Responsive Records

43.     LDF repeats and re-alleges the allegations contained in paragraphs 1 through 42 above, inclusive.

44.     LDF properly requested records that on information and belief are currently within the possession, custody, and control of DOJ, including its components CRD and OLP.

45.     DOJ is an agency subject to FOIA, and it must therefore make reasonable efforts to search for requested records.

46.     DOJ has provided no information to suggest whether it has reviewed any agency records, located agency records that might be responsive to the Request, or otherwise conducted an adequate search for records.

47.     DOJ's failure to conduct an adequate search for responsive records violates FOIA.

48.     Therefore, LDF is entitled to injunctive and declaratory relief requiring DOJ to promptly make reasonable efforts to search for records responsive to the Request.

**Count II: Violation of FOIA for Wrongful Withholding of Non-exempt Responsive Records**

49.     LDF repeats and re-alleges the allegations contained in paragraphs 1 through 48 above, inclusive.

50.     LDF properly requested records that on information and belief are currently within the possession, custody, and control of DOJ.

51.     DOJ is an agency subject to FOIA, and its components CRD and OLP must therefore release in response to a FOIA request any non-exempt records and provide a lawful reason for withholding any materials.

52.     CRD has provided no information to suggest whether it has reviewed any agency records, located agency records that might be responsive to the Request, or otherwise conducted an adequate search for records which would enable LDF to determine whether DOJ is wrongfully withholding and failing to produce non-exempt agency records responsive to LDF's Request.

53.     CRD has provided no information to suggest whether it has reviewed any agency records, located agency records that might be responsive to the Request, or otherwise conducted an adequate search for records which would enable LDF to determine whether DOJ it is wrongfully

withholding non-exempt agency records requested by LDF by failing to segregate exempt information in otherwise non-exempt records responsive to the Request.

54.     CRD has made unsupported, blanket assertions of Exemptions 5 and 7(A) and has failed to articulate any reasonably foreseeable harm to any interest protected by either of these exemptions, contrary to FOIA and the FOIA Improvement Act of 2016, Pub. L. No. 114-185, § 2(1)(D), 130 Stat. 538, 539 (2016) (codified as amended at 5 U.S.C. 552(a)(8)(A)(i)(I)). CRD has failed to establish that the narrow categories for exemptions apply.

55.     In addition to providing no documents or any portions thereof, CRD has also failed to provide any information about the records it is withholding, making it impossible for LDF to evaluate which records are being withheld under Exemption 7, which are being withheld under Exemption 5, and whether withholding *all* documents in their entirety is justified under these narrow exceptions to FOIA's general rule of "broad disclosure." *Milner v. Dep't of Navy*, 562 U.S. 562, 571 (2011) (quoting *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989)).

56.     "To fit within Exemption 7(A), the government must show that (1) a law enforcement proceeding is pending or prospective and (2) release of the information could reasonably be expected to cause some articulable harm." *Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479, 525 (S.D.N.Y. 2010) (internal quotation marks omitted). In its determination letter denying LDF's Request, CRD listed three "law enforcement proceedings," none of which DOJ is party to, and made no statements regarding the articulable harm that would be expected, other than stating that disclosure "could reasonably be expected to interfere" with CRD's "review of this issue." Ex. D at 1-2. *See Citizens for Responsibility and Ethics in Washington* (*CREW*) *v. U.S. Dep't of Justice*, 746 F.3d 1082, 1098 (D.C. Cir. 2014) (explaining that "it is not sufficient for the agency to simply assert that disclosure will interfere with enforcement proceedings"; it also

must, at minimum, define the categories of documents that it is withholding and explain "the specific risks entailed in premature disclosure" of each category). *Id.* at 1099. CRD's failure to provide all non-exempt records responsive to the Request violates FOIA.

57.     Through OLP's failure to respond to the Request, the component is wrongfully withholding non-exempt agency records requested by LDF by failing to produce non-exempt records responsive to the Request.

58.     Through OLP's failure to respond to the Request, the component is wrongfully withholding non-exempt agency records requested by LDF by failing to segregate exempt information in otherwise non-exempt records responsive to the Request.

59.     Therefore, LDF is entitled to declaratory and injunctive relief requiring CRD and OLP to produce promptly all non-exempt records or portions thereof responsive to the Request and provide indexes justifying the withholding of any responsive records or portions thereof withheld under claim of exemption.

**Count III: Violation of FOIA for Failure to Provide a Determination Within 30 Business Days**

60.     LDF repeats and re-alleges the allegations contained in paragraphs 1 through 59 above, inclusive.

61.     Within 20 days (excepting Saturdays, Sundays, and legal public holidays) after receiving the Request under FOIA, OLP had a legal duty to determine whether it must comply with the Request and a legal duty to notify the requester, here LDF, immediately of the agency's determination and the reasons for that determination. If the Request constitutes "unusual circumstances," as OIP, on behalf of OLP, claimed it does in this matter, the agency has an additional ten days to determine whether it will comply with the Request.

62.     OLP's failure to determine whether to comply with the Request within 30 business days after receiving it violates FOIA, 5 U.S.C. §§ 552(a)(6)(A)(i), 552(a)(6)(B)(i-iii) and applicable regulations promulgated thereunder.

### REQUESTED RELIEF

**WHEREFORE**, LDF requests that the Court award them the following relief:

1.     Order CRD and OLP to conduct and complete a search or searches reasonably calculated to uncover all records responsive to the Request;

2.     Order CRD and OLP to produce, within twenty (20) days of the Court's order, or by such other date as the Court deems appropriate, all records or portions thereof responsive to the Request and indexes justifying the withholding of any responsive records or portions thereof withheld under claim of exemption, without charge for any search or duplication fees;

3.     Declare that CRD violated FOIA by unlawfully withholding the requested records;

4.     Declare that OLP violated FOIA by failing to make a determination within the time period required by law;

5.     Enjoin CRD and OLP from continuing to withhold any and all non-exempt records or portions thereof responsive to the Request;

6.     Award LDF the costs of this proceeding, including reasonable attorneys' fees and other litigation costs reasonably incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

7.     Grant such other relief as the Court may deem just and proper.

DATED this 12th day of October, 2018.

Respectfully submitted,

*/s/ Leah C. Aden*
Sherrilyn A. Ifill
    President & Director Counsel
Janai S. Nelson

17

Leah C. Aden
Samuel Spital
Aaron Sussman
NAACP LEGAL DEFENSE &
    EDUCATIONAL FUND, INC.
40 Rector St., 5th Fl.
New York, NY 10006
(212) 965-2200
laden@naacpldf.org
asussman@naacpldf.org

*/s/ Austin R. Evers*
Austin R. Evers
    Executive Director
Cerissa Cafasso (D.C. Bar No. 1011003)*
AMERICAN OVERSIGHT
1030 15th Street NW, B255
Washington, DC 20005
(202) 869-5244
austin.evers@americanoversight.org
cerissa.cafasso@americanoversight.org

*pro hac vice* motion forthcoming

*Counsel for Plaintiff NAACP Legal Defense &
Educational Fund, Inc.*