**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC., |
| Plaintiff, |
| v. |
| UNITED STATES DEPARTMENT OF JUSTICE, |
| Defendant. |

Civil Action No. 1:18-cv-9363 (AJN)

<u>**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT**</u>

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT……………………………………………………..………. 1

BACKGROUND………………..……………………………………………………………. 1

      A.  Background on the Reinstatement of a Citizenship Question on the Census....1

      B.  Plaintiff's FOIA Request and DOJ's Response...........………....…...……...... 2

ARGUMENT………………………..………………………………………………..…………. 4

      A.   Legal Standards for Summary Judgment in FOIA Actions……..……..…... 4

      B.   CRT Conducted Searches Reasonably Calculated to Locate Responsive
          Records…………………………………………………………..…..…. 6

      C.  CRT Properly Withheld Information Pursuant to FOIA's Exemption 5...…11

          1.  Drafts of the Gary Letter, Portions of Emails Discussing Those Drafts, and
             Other Records Were Properly Withheld Pursuant to the Deliberative
             Process Privilege ……………..……………………….........................… 12

          2.  A Memorandum and Accompanying Hand-Written Note Were Properly
             Withheld Pursuant to the Deliberative Process Privilege, the Attorney-
             Client Privilege, and Work Product Doctrine.......................................…15

      D.   CRT Has Released All Reasonably Segregable Information…………...…. 18

CONCLUSION…………………………………………………………………………… 19

## **TABLE OF AUTHORITIES**

### **Cases**

*A. Michael's Piano, Inc. v. FTC,*
    18 F.3d 138 (2d Cir. 1994) ................................................................................... 17

*Am. Fed'n of Gov't Employees, Local 2782 v. U.S. Dep't of Commerce,*
    907 F.2d 203 (D.C. Cir. 1990) ............................................................................ 10

*Assadi v. U.S. Dep't of State,*
    No. 12 CIV. 1111 LLS, 2014 WL 4704840 (S.D.N.Y. Sept. 22, 2014) ................... 19

*Brennan Ctr. for Justice at New York Univ. Sch. of Law v. DOJ,*
    697 F.3d 184 (2d Cir. 2012) ................................................................................. 13

*Brinton v. Dep't of State,*
    636 F.2d 600 (D.C. Cir. 1980) ............................................................................ 16

*Carney v. DOJ,*
    19 F.3d 807 (2d Cir. 1994) ............................................................................... 5, 6

*CIA v. Sims,*
    471 U.S. 159 (1985) .............................................................................................. 4

*Coastal States Gas Corp. v. Dep't of Energy,*
    617 F.2d 854 (D.C. Cir. 1980) ............................................................................ 12

*Conti v. U.S. Dep't of Homeland Sec.,*
    12 Civ. 5827, 2014 WL 1274517 (S.D.N.Y. Mar. 24, 2014) ................................. 19

*Davis v. Dep't of Justice,*
    460 F.3d 92 (D.C. Cir. 2006) .............................................................................. 10

*EPA v. Mink,*
    410 U.S. 73 (1973) ......................................................................................... 12, 19

*Ethyl Corp. v. EPA,*
    25 F.3d 1241 (1994) ............................................................................................ 13

*Ferguson v. FBI,*
    No. 89 Civ. 5071 (RPP), 1995 WL 329307 (S.D.N.Y. June 1, 1995) ...................... 5

*Goland v. CIA,*
    607 F.2d 339 (D.C. Cir. 1978) ............................................................................ 10

*Grand Cent. P'ship v. Cuomo,*
    166 F.3d 473 (2d Cir. 1999) ....................................................................... *passim*

*Hopkins v. U.S. Dep't of Housing and Urban Development*,
   929 F.2d 81 (2d Cir. 1991) ........................................................................... 12, 13, 19

*Immigrant Def. Project v. U.S. Immigration & Customs Enforcement*,
   208 F. Supp. 3d 520 (S.D.N.Y. 2016) ....................................................................... 9

*John Doe Agency v. John Doe Corp.*,
   493 U.S. 146 (1989) ....................................................................................................... 4

*Klamath Water Users Protective Ass'n v. Dep't of Interior*,
   532 U.S. 1 (2001) ........................................................................................................ 11

*Main Street Legal Servs., Inc. v. Nat'l Sec. Council*,
   962 F.Supp.2d 472 (E.D.N.Y. Aug. 7, 2013) ........................................................... 5

*Martin v. DOJ*,
   488 F.3d 446 (D.C. Cir. 2007) .................................................................................... 4

*N.Y. Times v. DOJ*,
   756 F.3d 100 (2d Cir. 2014) ...................................................................................... 10

*Nat'l Council of La Raza v. DOJ*,
   411 F.3d 350 (2d Cir. 2005) ................................................................................ 11, 16

*Neufeld v. IRS*,
   646 F.2d 661 (D.C. Cir. 1981) .................................................................................. 19

*NLRB v. Sears*,
   421 U.S. 132 (1975) ............................................................................................. 12, 13

*Oglesby v. Dep't of the Army*,
   920 F.2d 57 (D.C. Cir. 1990) ...................................................................................... 6

*Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*,
   421 U.S. 168 (1975) .................................................................................................... 12

*Schaeffler v. United States*,
   806 F.3d 34 (2d Cir. 2015) ........................................................................................ 16

*Steinberg v. DOJ*,
   23 F.3d 548 (D.C. Cir. 1994) ...................................................................................... 6

*Sussman v. U.S. Marshals Serv.*,
   494 F.3d 1106 (D.C. Cir. 2007) ................................................................................ 19

*Tigue v. DOJ*,
   312 F.3d 70 (2d Cir. 2002) .................................................................................. 11, 12

*United States v. Adlman,*
   134 F.3d 1194 (2d Cir. 1998) ......................................................................................... 17

*Williams v. Bridgeport Music, Inc.,*
   300 F.R.D. 120 (S.D.N.Y. 2014) .................................................................................... 18

*Wilner v. NSA,*
   592 F.3d 60 (2d Cir. 2009) .............................................................................................. 5

## **Statutes**

5 U.S.C. § 552(a)(3)(C) ........................................................................................................ 5, 6

5 U.S.C. § 552(a)(4)(B) ........................................................................................................... 5

5 U.S.C. § 552(b) .................................................................................................................... 18

5 U.S.C. § 552(b)(5) ............................................................................................................... 11

## **Rules**

Fed. R. Civ. P. 26(b)(3) .......................................................................................................... 17

Fed. R. Civ. P. 56(a) ................................................................................................................ 5

## PRELIMINARY STATEMENT

This Freedom of Information Act (FOIA) lawsuit concerns Plaintiff NAACP Legal

Defense and Education Fund, Inc.'s request for records relating to the Department of Justice's

(DOJ) request for the reinstatement of a citizenship question on the 2020 census questionnaire.

In response to Plaintiff's FOIA request, the Department of Justice (DOJ) has produced 178 pages

in full or with redactions, and withheld 63 pages in full.

The Defendant's declarations logically and plausibly establish that it conducted an

adequate search for potentially responsive records, and that the documents at issue in this case

are protected from disclosure, in whole or in part, by Exemption 5 or Exemption 6.  Accordingly,

the government is entitled to summary judgment on all of Plaintiff's claims.

## BACKGROUND

### A.    Background on the Reinstatement of a Citizenship Question on the Census

Secretary Ross, the Secretary of Commerce, "began considering various fundamental

issues" regarding the 2020 census "[s]oon after [his] appointment" as Secretary of Commerce.  As

part of his deliberative process, he and his staff "consulted with Federal governmental components

and inquired whether the Department of Justice (DOJ) would support, and if so would request,

inclusion of a citizenship question as consistent with and useful for the enforcement of the Voting

Rights Act."  Supp. Mem. Sec. Commerce Wilbur Ross Re: Admin. Record Census Lit., *State of

New York v. U.S. Dep't of Commerce*, No. 18-cv-2921 (S.D.N.Y.), ECF No. 189-1 (attached here

as Exhibit 1).

DOJ did request that the Census Bureau reinstate a citizenship question on the 2020 census

questionnaire by a letter sent to the Census Bureau on December 12, 2017.  Letter from Art Gary,

General Counsel of DOJ's Justice Management Division, to Dr. Ron Jarmin (Dec. 12, 2017) (the

Gary Letter), *State of New York v. U.S. Dep't of Commerce*, No. 18-cv-2921 (S.D.N.Y.),

1

AR000663-00685[1] (attached here as Exhibit 2).  One person at CRT who was involved in drafting

the Gary Letter was John Gore, who was Acting Assistant Attorney General (AAG) for Civil

Rights from July 28, 2017 to October 11, 2018, and Deputy Assistant Attorney General (DAAG)

for the Voting Section of CRT from January 2017 to the present.  The Gary Letter stated that

citizenship data is important to DOJ's enforcement of the Voting Rights Act (VRA), and that for

several reasons the inclusion of a citizenship question on the decennial census would provide more

granular and useful data than the currently available data.  Gary Letter.  After receiving the Gary

Letter, Secretary Ross issued a memorandum reinstating a citizenship question on the 2020 census

questionnaire on March 26, 2018.  Mem. from Sec. Ross Re: Reinstatement Cit. Question 2020

Decennial Census Questionnaire, *State of New York v. U.S. Dep't of Commerce*, No. 18-cv-2921

(S.D.N.Y.), AR001313-1320 (attached here as Exhibit 3).

Secretary Ross's decision to reinstate a citizenship question has been the subject of several

substantive lawsuits, including two consolidated cases in the Southern District of New York that

are pending decision at the Supreme Court after an oral argument on April 23, 2019.  *State of New*

*York v. U.S. Dep't of Commerce*, No. 18-cv-2921 (S.D.N.Y.); *Dep't of Commerce v. New York*,

No. 18-966 S. Ct. (oral argument heard April 23, 2019).

**B.    Plaintiff's FOIA Request and DOJ's Response**

By letter dated April 11, 2019, Plaintiff's submitted a FOIA request to DOJ's Office of

Legal Policy (OLP) and Civil Rights Division (CRT).  Letter from Sherrilyn Ifill to Laurie Day

and Nelson D. Hermila (the Request) (April 11, 2018), ECF No. 1-1.  Plaintiff's FOIA request

---

[1] Portions of the Administrative Record in *State of New York v. U.S. Dep't of Commerce*, No. 18-cv-2021 (S.D.N.Y.) are available at http://www.osec.doc.gov/opog/FOIA/Documents/ AR%20-%20FINAL%20FILED%20-%20ALL%20DOCS%20[CERTIFICATION-INDEX-DOCUMENTS]%206.8.18.pdf.

seeks five categories of documents "in response to the March 26, 2018 decision issued by U.S. Department of Commerce Secretary Wilbur Ross to reinstate a citizenship question on the 2020 decennial U.S. Census at the request of the Department of Justice":

> (1) All documents, including but not limited to draft and final memoranda, opinions, analyses, or correspondence, relating to the U.S. Department of Justice's review of whether a citizenship status question on the 2020 decennial U.S. Census is necessary to enforce Section 2 of the Voting Rights Act and/or how adding a citizenship question will improve protections for minority voting rights.

> (2) All documents, including but not limited to draft and final memoranda, opinions, analyses, or correspondence, relating to the U.S. Department of Justice's request for a citizenship status question on the 2020 decennial U.S. Census as necessary to enforce Section 2 of the Voting Rights Act.

> (3) All documents, including but not limited to draft and final memoranda, opinions, analyses, or correspondence, relating to the Department's review of whether a citizenship status question on the American Community Survey (ACS) is "insufficient in scope, detail, and certainty" to enforce Section 2 of the Voting Rights Act.

> (4) All documents, including but not limited to draft and final memoranda, opinions, analyses, or correspondence, relating to the Department's review of whether a citizenship status question on the 2020 decennial U.S. Census will have an impact on the response rate of Black or African American people on the 2020 decennial U.S. Census count.

> (5) All documents, including but not limited to draft and final memoranda, opinions, analyses, or correspondence, relating to the Department's review of whether a citizenship status question on the 2020 decennial U.S. Census will have an impact on the response rate of non-Black or non-African American racial or ethnic groups on the 2020 decennial U.S. Census count.

Request (footnotes omitted).

In response to Plaintiff's request, OLP[2] and CRT searched for responsive records.  No responsive records were identified at OLP, and Plaintiff does not challenge the adequacy of OLP's search.  Thus, only CRT's response is at issue in this motion.

CRT identified 241 pages of responsive records, and released the segregable, non-exempt portions to Plaintiff.  CRT released 115 pages in full and withheld 63 pages in full.  It released 41 pages with redactions under FOIA's Exemption 6 only, and 22 pages with redactions under FOIA Exemptions 5 and/or 6.  Plaintiff does not challenge CRT's redactions pursuant to Exemption 6. Plaintiff challenges the adequacy of CRT's search for responsive records, as described in the simultaneously filed Cooper Declaration, and the propriety of its Exemption 5 withholdings, which are justified as described in CRT's *Vaughn* index, attached to the Cooper Declaration as Exhibit K.

## ARGUMENT

### A.    Legal Standards for Summary Judgment in FOIA Actions

The Freedom of Information Act, 5 U.S.C. § 552, represents a balance struck by Congress "between the right of the public to know and the need of the Government to keep information in confidence."  *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (quoting H.R. Rep. 89-1497, 89th Cong., 2d Sess. 6 (1966)).  Thus, while FOIA requires disclosure under certain circumstances, the statute recognizes "that public disclosure is not always in the public interest and thus provided that agency records may be withheld from disclosure under any of the nine exemptions defined in 5 U.S.C. § 552(b)."  *CIA v. Sims*, 471 U.S. 159, 166-67 (1985); *see also Martin v. DOJ*, 488 F.3d 446, 453 (D.C. Cir. 2007) ("Recognizing, however, that the public's right

---

[2] The search at OLP was conducted by DOJ's Office of Information Policy, which processes FOIA requests on behalf of OLP.

to information was not absolute and that disclosure of certain information may harm legitimate governmental or private interests, Congress created several exemptions to FOIA disclosure requirements." (internal quotation marks omitted)).[3]

Most FOIA actions are resolved by summary judgment.  *See, e.g.*, *Grand Cent. P'ship v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999); *Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994). Summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In a FOIA case, courts consider two issues to determine whether summary judgment for the defendant agency is appropriate. First, the court determines whether the agency has made "reasonable efforts to search for the records" requested by the plaintiff.  *See* 5 U.S.C. § 552(a)(3)(C); *see also Carney*, 19 F.3d at 812.  Second, if an agency's search locates records responsive to a request, the court determines whether the government has properly withheld records or information under any of FOIA's exemptions.  *See* 5 U.S.C. § 552(a)(4)(B).  "Affidavits or declarations supplying facts indicating that the agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden." *Carney*, 19 F.3d at 812.  An agency's declarations in support of its determination are "accorded a presumption of good faith."  *Id.* (quotation marks omitted); *Wilner v. NSA*, 592 F.3d 60, 69 (2d Cir. 2009).[4]

---

[3] Courts in this Circuit frequently cite FOIA decisions from the D.C. Circuit, "a jurisdiction with considerable experience on FOIA matters."  *Main Street Legal Servs., Inc. v. Nat'l Sec. Council*, 962 F.Supp.2d 472, 474 (E.D.N.Y. Aug. 7, 2013) (citing cases).

[4] Defendant has not submitted a Local Rule 56.1 statement, as "the general rule in this Circuit is that in FOIA actions, agency affidavits alone will support a grant of summary judgment," and a Local Rule 56.1 statement "would be meaningless."  *Ferguson v. FBI*, No. 89 Civ. 5071 (RPP), 1995 WL 329307, at *2 (S.D.N.Y. June 1, 1995), *aff'd*, 83 F.3d 41 (2d Cir. 1996).

**B.**     __CRT Conducted Searches Reasonably Calculated to Locate Responsive Records__

Here, CRT's search has met and exceeded the requirements.  An agency's search for records responsive to a FOIA request "need not be perfect, but rather need only be reasonable." *Grand Cent. P'ship v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999).  Thus, to prevail on summary judgment as to the adequacy of its search, an agency must only "show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); 5 U.S.C. § 552(a)(3)(C).  Once an agency submits a search declaration describing a reasonable search, the agency is entitled to a presumption of good faith and the court may award summary judgment on that basis.  *Carney*, 19 F.3d at 812.  The FOIA plaintiff can rebut the presumption only by making a showing of bad faith on the part of the agency, and "purely speculative claims about the existence and discoverability of other documents" are insufficient. *Grand Central*, 166 F.3d at 489 (quotation marks omitted).  Agencies are not required to search locations on the mere possibility that a responsive record might exist. *See Steinberg v. DOJ*, 23 F.3d 548, 551 (D.C. Cir. 1994) ("The question is not 'whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*.'" (quoting *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984))).

Here, CRT's searches abundantly satisfy this standard.  CRT has conducted extensive searching to identify records responsive to Plaintiff's request.  CRT interpreted subpart (2) to seek "records relating to DOJ's decision to send the Gary Letter, including the process of drafting and sending the Gary Letter, and DOJ's decisionmaking process," as opposed to after-the-fact discussions arising from the controversy surrounding the citizenship question, such as preparation for congressional hearings, responses to media inquiries, and the substantive litigation concerning the citizenship question.  Cooper Decl. ¶ 8.  This is a reasonable interpretation of Plaintiff's request

for records "relating to [DOJ's] request for a citizenship status question on the 2020 decennial U.S. Census as necessary to enforce Section 2 of the Voting Rights Act," Request, and assisted CRT in identifying responsive records for Plaintiff and while avoiding a large volume of non-responsive records. This interpretation is especially reasonable in light of the language in Plaintiff's request indicating that it was submitted "in response to the March 26, 2018 decision issued by . . . Secretary Wilbur Ross to reinstate a citizenship question on the 2020 decennial U.S. Census at the request of the Department of Justice," Request, which indicates Plaintiff's interest in DOJ's role leading up to the Secretary's decision, rather than DOJ's subsequent decisions concerning how to message its decision and DOJ's litigation role.

CRT determined that its Voting Section and the Office of the Assistant Attorney General for Civil Rights (OAAG) were the two offices likely to contain records responsive to Plaintiff's request, because the Voting Section enforces Section 2 of the Voting Rights Act and is the primary point of contact for census data, and the OAAG supervises the Voting Section. Cooper Decl. ¶¶ 6-7.

The request was referred to the senior management and leadership of the Voting Section. As to subpart (2) of Plaintiff's request, Voting Section leadership determined that the electronic files of Chris Herren, the Chief of the Voting Section, was the only location likely to contain responsive records because Mr. Herren was the only person in the Voting Section who communicated with Acting AAG Gore about the Gary Letter. Cooper Decl. ¶ 11. Mr. Herren searched his email for emails with Acting AAG Gore concerning the Gary Letter, and identified responsive documents. Cooper Decl. ¶ 11. Mr. Herren indicated that he did not have any responsive hard-copy files. Cooper Decl. ¶ 16.

In consultation with Mr. Gore, it was determined that he was the only OAAG employee likely to have records responsive to Plaintiff's request because he was the only OAAG employee who "had a substantive role in the preparation of the Gary Letter or who had communications with individuals outside of OAAG about the citizenship question on the 2020 Census."  Cooper Decl. ¶ 13.  Two other OAAG employees had incidental roles and were identified on a handful of Acting AAG Gore's emails: Bethany Pickett,[5] Counsel to the AAG, and Ben Aguiñaga,[6] Mr. Gore's Chief of Staff.  Cooper Decl. ¶ 14.  Mr. Gore's files were searched multiple times.  Mr. Gore's files were searched in February of 2018 and again in July 2018 for the term "census."  Cooper Decl. ¶¶ 14-15.  Mr. Gore's files were also searched in July 2018 for any emails involving (as either a "to," "from," "cc," or "bcc") Arthur Gary, Cooper Decl. ¶ 15, the attorney at DOJ's Justice Management Division who was involved in drafting and ultimately sent the Gary Letter.  Mr. Gore's files were also searched in July 2018 for emails involving Bethany Pickett.  Cooper Decl. ¶ 15.  These searches produced a set of responsive documents.  Mr. Gore's hardcopy files were also manually searched in August 2018 for records relating to the drafting of the Gary Letter and communications with Commerce or DOJ leadership about the Gary Letter after it was sent, which resulted in additional responsive records.  Cooper Decl. ¶ 16.

Finally, after identifying a few additional responsive emails during the course of the litigation that were largely, but not entirely, duplicative of produced emails—the releasable portions of which have been provided to Plaintiff, Cooper Decl. ¶ 28—CRT decided to undertake a supplemental search to ensure that it had identified all responsive records.  Cooper Decl. ¶ 20.

---

[5] Ms. Pickett was also asked if she had responsive hardcopy documents, but she did not. Cooper Decl. ¶ 16.

[6] Mr. Aguiñaga was also asked if he had responsive hardcopy documents, but he did not. Cooper Decl. ¶ 16.

8

CRT searched the database of records collected in electronic and hardcopy form as part of the civil litigation regarding the Census.  Cooper Decl. ¶ 20-23.  The CRT custodians used to collect the electronic and hardcopy files in the database were Acting AAG Gore, Voting Section Chief Herren, Bethany Pickett, and Ben Aguiñaga.  Cooper Decl. ¶ 20.   Their electronic files were collected using the search terms "citizenship and commerce, citizenship and DOC, citizenship and census, citizenship and decennial, citizenship and ACS, citizenship and ross, Wilbur /5 ross, james /5 uthmeier,  and earl /5 comstock," as well as additional terms.  Cooper Decl. ¶ 20.  Electronic records were collected over the date range from January 20, 2017 to August 2018.  Cooper Decl. ¶ 20.  For its supplemental search, CRT searched this database of records using the search term "census" or the term "citizenship question" in the emails of John Gore, Chief Chris Herren, Bethany Pickett, and Ben Aguiñaga.  Cooper Decl. ¶ 22.  As expected, this search essentially replicated the results of earlier searches and did not locate additional responsive documents. Cooper Decl. ¶ 23.

CRT used the term "citizenship question" in its supplemental search at the suggestion of Plaintiff.  Plaintiff also suggested that "citizenship" alone or "voting" be used as a search term. However, these terms are very broad and likely to lead to a large number of false hits, or documents that do not relate to the topic of Plaintiff's request.  The Voting Section and the DAAG supervising the Voting Section would be expected to have a large number of records containing the word "voting" due to the nature of their work, and "citizenship" is also discussed in the voting rights area in the context of enforcing Section 2 of the Voting Rights Act.  *See* Cooper Decl. ¶ 22.  Nor should CRT be required to undertake such a burdensome search that would likely result in a plethora of non-responsive documents.  *See Immigrant Def. Project v. U.S. Immigration & Customs Enforcement*, 208 F. Supp. 3d 520, 528 (S.D.N.Y. 2016) ("[T]he

omission of certain search terms or keywords does not alone demonstrate that Defendants' search was inadequate"); *see also Am. Fed'n of Gov't Employees, Local 2782 v. U.S. Dep't of Commerce*, 907 F.2d 203, 209 (D.C. Cir. 1990) (holding that "[a]n agency need not honor a request that requires 'an unreasonably burdensome search'" (citing *Goland v. CIA*, 607 F.2d 339, 353 (D.C. Cir. 1978))).

In addition to the searches previously described for material relating to subpart (2) of Plaintiff's request—DOJ's analysis and decisionmaking leading to its decision to request the reinstatement of a citizenship question through the Gary Letter—CRT investigated whether additional records existed relating to subparts (1), (3), (4), or (5) of Plaintiff's request that would not have been captured by CRT's search relating to subpart (2). Cooper Decl. ¶ 16-17. Both the Voting Section and OAAG were searched, but no additional responsive records were identified. CRT referred Plaintiff's request to the senior management and leadership of the Voting Section, who determined, based on their familiarity with the portfolios of all Voting Section employees, that no additional records responsive to subparts (1), (3), (4), or (5) of Plaintiff's request were likely to exist in the Voting Section. Cooper Decl. ¶ 18. To the extent, of course, that responsive records relating to the process of developing the Gary Letter existed, and those records would already have been located. Likewise, Mr. Gore did not have any additional records responsive to subparts (1), (3), (4), or (5) of Plaintiff's request other than the records already provided in response to subpart (2). Cooper Decl. ¶ 18.

Reasonableness, not perfection, is the guiding principle in assessing a search for responsive records. *Davis v. DOJ*, 460 F.3d 92, 105 (D.C. Cir. 2006); *see also N.Y. Times v. DOJ*, 756 F.3d 100, 124 (2d Cir. 2014) ("The adequacy of a search is not measured by its results, but rather by its method."). The fact that CRT has engaged in a supplemental search and supplemental productions

further demonstrates the reasonable and good faith nature of its search for relevant records. Because CRT's declarations in support of the adequacy of its search sufficiently demonstrate that it undertook multiple searches reasonably expected to located responsive records, the Court should grant CRT summary judgment on the adequacy of its search.

## C.  **CRT Properly Withheld Information Pursuant to FOIA Exemption 5**

CRT properly redacted and withheld privileged materials exempt from disclosure under FOIA.  FOIA's fifth exemption protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  Exemption 5 "encompass[es] traditional common-law privileges against disclosure, including the work-product doctrine, and executive, deliberative process and attorney–client privileges."  *Nat'l Council of La Raza v. DOJ*, 411 F.3d 350, 356 (2d Cir. 2005); *see also Tigue v. DOJ*, 312 F.3d 70, 76 (2d Cir. 2002) ("Stated simply, agency documents which would not be obtainable by a private litigant in an action against the agency under normal discovery rules . . . are protected from disclosure under Exemption 5." (internal quotation marks omitted)).

As an initial matter, there can be no question that these records are intra- or inter-agency documents covered by Exemption 5.  The source of these records is "a government agency," where "'agency' is defined to mean 'each authority of the Government,' . . . and includes entities such as Executive Branch Departments, military departments, Government corporations, Government-controlled corporations, and independent regulatory agencies."  *Klamath Water Users Protective Ass'n*, 532 U.S. at 2 (quoting 5 U.S.C. §§ 551(1), 552(f)).  Specifically, the records at issue consist mainly of intra-agency emails sent among DOJ employees, and entirely of communications within the Executive Branch.   Cooper Decl. ¶ 31.   The Exemption 5 withholdings implicate the deliberative process privilege, work-product doctrine, and attorney–client privilege.

11

1. <u>Drafts of the Gary Letter, Portions of Emails Discussing Those Drafts, and Other Records Were Properly Withheld Pursuant to the Deliberative Process Privilege</u>

CRT properly redacted and withheld deliberative information.  In enacting Exemption 5, "[o]ne privilege that Congress specifically had in mind was the 'deliberative process' or 'executive' privilege."  *Hopkins*, 929 F.2d at 84.  The purpose of the deliberative process privilege is to protect an agency's decisionmaking processes by shielding them from view.  *See, e.g.*, *Grand Cent. P'ship*, 166 F.3d at 481 ("[E]fficiency of Government would be greatly hampered if, with respect to legal and policy matters, all Government agencies were prematurely forced to operate in a fishbowl." (quoting *EPA v. Mink*, 410 U.S. 73, 87 (1973)); *id.* (noting that Exemption 5 was "designed to safeguard and promote agency decisionmaking processes in at least three ways: '[I]t serves to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action.'" (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980))).

To fall within the deliberative process privilege, a record must be both predecisional and deliberative.  *Tigue v. DOJ*, 312 F.3d 70, 76 (2d Cir. 2002).  A document is "predecisional" when it is "prepared in order to assist an agency decisionmaker in arriving at his decision." *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975).  While a document is predecisional if it "precedes, in temporal sequence, the 'decision' to which it relates," *Grand Cent. P'ship*, 166 F.3d at 482, the government need not "identify a specific decision" made by the

agency to establish the predecisional nature of a particular record.  *NLRB v. Sears*, 421 U.S. 132, 151 n.18 (1975); *accord Tigue*, 312 F.3d at 80.  Predecisional deliberative documents include "documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'"  *Hopkins*, 929 F.2d at 84-85 (quoting *Sears*, 421 U.S. at 150).

As detailed in the attached *Vaughn* index, Cooper Decl. Ex. K, CRT withheld several categories of information pursuant only to the deliberative process privilege.[7]

***Non-final drafts of the Gary Letter***.  First, CRT withheld in full a number of non-final drafts of the Gary Letter that been circulated internally within DOJ.  Cooper Decl. Ex. K.[8]  All of these drafts are both pre-decisional (because they necessarily pre-date the final Gary Letter) and deliberative, because they reveal the thinking of the agency concerning whether to send the Gary Letter and what content to include.  Some of the drafts contain comment bubbles, revisions, and suggestions, and all of the drafts would necessarily reveal the agency's decisionmaking process by comparison to the final Gary Letter.  For these reasons, internal drafts have long been considered the core of the deliberative process privilege.  *See Grand Cent. P'ship*, 166 F.3d at 482 (holding that Exemption 5 protects "recommendations, *draft documents*, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency" (quoting *Ethyl Corp. v. EPA*, 25 F.3d 1241, 1248 (1994)) (emphasis added)); *see also, e.g.*, *Brennan Ctr. for Justice at New York Univ. Sch. of Law v. DOJ*, 697 F.3d 184, 206 (2d Cir. 2012) (finding that draft memoranda could be withheld pursuant to Exemption 5 when they were

---

[7] CRT also withheld a handful of records both pursuant to the deliberative process privilege and other privileges.  For clarity, those documents are discussed *infra* at Part C.2.

[8] *See* Cooper Decl. Ex. K (discussing WIF 1-42, WIF 60-63).

neither "expressly adopted [n]or incorporated by reference" by the agency in explaining its ultimate policy). Indeed, in the civil discovery context, a judge in this circuit recently considered several similar and, in cases, identical, drafts of the Gary Letter and found, after *in camera* review, that they were properly withheld from civil discovery pursuant to the deliberative process privilege. *See* Order at 5 (Oct. 5, 2018), ECF No. 369 (finding that the four drafts of the Gary Letter "are protected by the deliberative process privilege"), Ex. 4.

   ***Emails discussing and transmitting non-final drafts of the Gary Letter.*** CRT also identified a number of email chains associated with these non-final drafts of the Gary Letter. CRT did not withhold any of the email chains in full, but produced them with redactions for deliberative material. Cooper Decl. Ex. K.[9] Like the drafts themselves, the redacted portions of the emails contain commentary, suggestions, and thoughts about the draft letters which would reveal the agency's deliberative process in determining whether to send the Gary Letter and what its eventual contents should be. The redacted portions of the emails should, like the draft letters, be withheld.

   ***Other deliberative material***. In addition to the drafts of the Gary Letter and the emails discussing them, CRT also withheld deliberative portions an email chain between Acting AAG Gore and another DOJ attorney discussing "selecting a method of transmitting the Gary Letter."[10] The redacted portions pre-date the final decision concerning transmittal and contain the participants' candid thoughts and opinions about that issue, as well as intra-agency discussion of the issue. CRT determined that its withholdings pursuant to the deliberative process privilege were

---

   [9] *See* Cooper Decl. Ex. K (discussing records Bates-stamped 1-38, comprising emails between Acting AAG Gore and Arthur Gary); Cooper Decl. Ex. K (discussing records Bates-stamped 61-69, comprising emails between Acting AAG Gore and other DOJ attorneys).

   [10] *See* Cooper Decl. Ex. K (177-78).

necessary to protect pre-decisional, deliberative communications, and to avoid chilling federal government employees in their airing of all pertinent information and viewpoints on controversial topics.  Cooper Decl. Ex. K.  Any such lack of candor would seriously impair the agency's ability to foster the forthright internal discussions necessary for effective decisionmaking.  Cooper Decl. ¶ 32.

2.  <u>A Memorandum and Accompanying Hand-Written Note Were Properly Withheld Pursuant to the Deliberative Process Privilege, Attorney–Client Privilege, and the Work Product Doctrine</u>

As noted above, the lion's share of the withholdings at issue here were taken pursuant to the deliberative process privilege alone.  Two records were withheld pursuant to the deliberative process privilege, attorney–client privilege, and the work product doctrine.  The first record is a legal memorandum prepared by James Uthmeier, at the time an attorney in the Office of General Counsel at the Department of Commerce, and provided by Mr. Uthmeier to Acting AAG Gore (the Uthmeier memo).[11]  The second record is a note that Mr. Uthmeier handwrote and gave to Acting AAG Gore with the Uthmeier memo.[12]  The Uthmeier memo contains "attorney Uthmeier's legal analysis, recommendations, and advice concerning the legal authority for reinstating a citizenship question on the decennial census questionnaire," as provided by attorney Uthmeier to Secretary Ross.  Cooper Decl. Ex. K (WIF 43-59).  The accompanying note "transmits the memo [to Acting AAG Gore], provides opinions from Commerce concerning reinstating a citizenship question, and highlights portions of the memo that attorney Uthmeier thought were especially pertinent." Cooper Decl. Ex. K (WIF 43-59).

---

[11] *See* Cooper Decl. Ex. K (WIF 44-59).

[12] *See* Cooper Decl. Ex. K (WIF 43).

First, the note and Uthmeier memo are subject to the deliberative process privilege, as both pre-date the Gary Letter and were considered by Acting AAG Gore in drafting the Gary Letter. Cooper Decl. Ex. K (WIF 43-59); *see also* Gore Decl. ¶ 4, Cooper Decl. Ex. M.  In addition to their deliberative role in *DOJ's* decisionmaking, the note and memo reflect Mr. Uthmeier's deliberations and pre-date the *Commerce's* March 2018 decision to reinstate the citizenship question.  Cooper Decl. Ex. K (WIF 43-59); *see also* Comstock Decl. ¶¶ 5-6, Cooper Decl. Ex. L. The note and Uthmeier memo are thus classic deliberative-process material.  *See Brinton v. Dep't of State*, 636 F.2d 600, 604 (D.C. Cir. 1980) (holding that legal advice, no less than other types of advisory opinions, "fits exactly within the deliberative process rationale for Exemption 5"); *accord Nat'l Council of La Raza v. DOJ*, 411 F.3d 350, 356-57 (2d Cir. 2005) (holding that a OLC advice memorandum was protected by deliberative process privilege absent express adoption).

The note and Uthmeier memo are also subject to the attorney–client privilege, as both were provided as part of an effort to seek Acting AAG Gore's "legal advice concerning a common enterprise" between Mr. Uthmeier and Acting AAG Gore.  Cooper Decl. Ex. K (WIF 43-59); *see also* Gore Decl. ¶ 5, Cooper Decl. Ex. M.  The attorney-client privilege protects communications "for the obtaining or providing of legal advice" "that are intended to be, and in fact were, kept confidential." *Schaeffler v. United States*, 806 F.3d 34, 40 (2d Cir. 2015).  The privilege may be waived if the communications are shared with "an outsider."  *Id.*  However, the privilege is not waived when it is shared with an entity "engaged in a 'common legal enterprise' with the holder of the privilege"—for example, where "multiple clients share a common interest about a legal matter." *Id.* (citations omitted). Litigation need not be in progress, as long as the communications are "made in the course of an ongoing common enterprise and intended to further the enterprise." *Id.* (citations omitted).

These requirements are met for the memo and note.  Both were shared by Mr. Uthmeier with AAG Gore as part of a common enterprise concerning the 2020 Census, and were kept confidential.  Cooper Decl. Ex. K (WIF 43-59).  In addition, the memo was further written by attorney Uthmeier and provided to his client, Secretary Ross, for the purpose of providing legal advice.  Cooper Decl. Ex. K (WIF 43-59); *see also* Comstock Decl. ¶ 4, Cooper Decl. Ex. L (stating that the Uthmeier memo "contains a communication between a DOC attorney and his client that was made for the purpose of obtaining legal advice").

Finally, the note and memo are subject to the attorney work-product doctrine, as they contain attorney Uthmeier's mental impressions in anticipation of litigation.  The work product doctrine protects documents "prepared in anticipation of litigation or for trial by or for another party or its representative," as well as "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."  Fed. R. Civ. P. 26(b)(3); *accord A. Michael's Piano, Inc. v. FTC*, 18 F.3d 138, 146 (2d Cir. 1994).  Without such protection, an entity would have to choose between "scrimp[ing] on candor and completeness" or disclosing its "assessment of its strengths and weakness . . . to litigation adversaries."  *United States v. Adlman*, 134 F.3d 1194, 1200 (2d Cir. 1998).  There is no requirement that litigation exist at the time a protected document is created; documents created with the reasonable belief of future litigation may constitute work product.  *See, e.g.*, *id.* at 1199-1200 (offering examples of protected work product).

Here, the note and memo both contain attorney Uthmeier's mental impressions in anticipation of litigation.  Cooper Decl. Ex. K (WIF 43-59).  Indeed, attorney Uthmeier was specifically asked to prepare the memo in anticipation of the litigation that would result if Secretary Ross decided to reinstate a citizenship question.  Cooper Decl. Ex. K (WIF 43-59); *see also*

17

Comstock Decl. ¶ 8, Cooper Decl. Ex. L.  That both the note and memo were shared with Acting

AAG Gore, an attorney at DOJ, for the purpose of obtaining his legal advice, does not affect the

availability of the attorney work-product doctrine.  "[W]ork-product protection is not necessarily

waived by disclosure to third parties," but is waived "only if the disclosure substantially increases

the opportunity for potential adversaries to obtain the information." (citation omitted)).  *Williams*

*v. Bridgeport Music, Inc.*, 300 F.R.D. 120, 123 (S.D.N.Y. 2014).  In this case, attorney Uthmeier

and acting AAG Gore's interests were aligned such that sending the note did not increase the odds

of widespread dissemination, as evidenced by the fact that both were working on a common legal

enterprise and that the note and memo were kept confidential.

In addition, a judge in this circuit recently held after *in camera* review that the Uthmeier

memo and accompanying note could be withheld in the civil discovery context.  *See* Order, *New*

*York v. U.S. Dep't of Commerce*, No. 18-cv-2921 (Sept. 30, 2018), ECF No. 361 (docket-only

order "uphold[ing] Defendants' invocation of the attorney–client privilege with respect to" several

versions of the Uthmeier memo the *New York* plaintiffs sought from Commerce; the court did not

reach the applicability of the deliberative process privilege); *see also* Transcript at 8:6-8, *New York*

*v. U.S. Dep't of Commerce*, No. 18-cv-2921 (Nov. 1, 2018) (extracts from the transcript of the

pretrial conference at which the court held that the handwritten note "is protected under all three

doctrines [deliberative process privilege, attorney-client privilege, and attorney work-product

doctrine] invoked by defendant"), Ex. 5.

D.     <u>**CRT Released All Reasonably Segregable Information**</u>

Consistent with its obligations under FOIA, CRT released all reasonably segregable

information.  Cooper Decl. ¶¶ 34, 41; Cooper Decl. Ex. K.  FOIA requires that "[a]ny reasonably

segregable portion of a record shall be provided to any person requesting such record after deletion

of the portions which are exempt." 5 U.S.C. § 552(b).  But, factual material that is "inextricably

intertwined" with the privileged portions such that disclosure would "compromise the confidentiality of deliberative information that is entitled to protection under Exemption 5" need not be disclosed. *Hopkins v. HUD*, 929 F.2d 81, 85 (2d Cir. 1991) (quoting *Mink*, 410 U.S. at 92). In addition, an agency has no obligation to segregate non-exempt material that is so intertwined with exempt material that "the excision of exempt information would impose significant costs on the agency and produce an edited document with little informational value." *Neufeld v. IRS*, 646 F.2d 661, 666 (D.C. Cir. 1981), *overruled on other grounds by Church of Scientology of Cal. v. IRS*, 792 F.2d 153 (D.C. Cir. 1986) (en banc).

Here, CRT reviewed each document and withheld information only after concluding that there was no reasonably segregable material that could be released or information for which a discretionary waiver of exemption might apply. Cooper Decl. Ex. K. "The agency is entitled to a presumption that it complied with its obligation to disclose reasonably segregable material." *Assadi v. U.S. Dep't of State*, No. 12 CIV. 1111 LLS, 2014 WL 4704840, at *9 (S.D.N.Y. Sept. 22, 2014) (quoting *Conti v. U.S. Dep't of Homeland Sec.*, 12 Civ. 5827, 2014 WL 1274517, at *25 (S.D.N.Y. Mar. 24, 2014)); *see also Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). Here, the presumption that CRT complied with its obligation should apply, and the Court should grant judgment to CRT. In addition, the numerous documents that CRT has released with redactions rather than withhold in full indicate CRT's commitment to releasing reasonably segregable material.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment should be granted.

Dated: May 13, 2019                          Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

/s/ Rebecca M. Kopplin
REBECCA M. KOPPLIN
Trial Attorney (California Bar No. 313970)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, D.C.  20005
Telephone:  (202) 514-3953
Facsimile:  (202) 616-8202
Email: Rebecca.M.Kopplin@usdoj.gov

*Counsel for Defendant*

20